UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| US AIRWAYS, INC., *et al.* | ) | Case No. 04-13819-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |
| | ) | |
| PHILLIP H. FRAZIER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 05-1131 |
| | ) | |
| US AIRWAYS, INC. | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This matter is before the court on cross-motions for summary judgment. The plaintiff, Phillip H. Frazier, has asserted a $9.06 million claim against the debtor, US Airways, Inc., based upon a contempt motion that the debtor brought against him—he says unjustifiably—in its prior chapter 11 case. The question is whether Mr. Frazier has forecast sufficient evidence to establish that the bringing of the contempt motion constituted illegal retaliation for filing an employment discrimination complaint, malicious prosecution, or intentional infliction of emotional harm. Because the evidence would not support any of the pleaded causes of action, Mr. Frazier's motion for summary judgment will be denied, the debtor's motion for summary judgment will be granted, and the complaint will be dismissed.

1

Background

The plaintiff, Phillip H. Frazier, is a long-time employee of the defendant airline, US Airways, Inc. ("US Airways).  US Airways, together with its parent holding company and several affiliates, filed a petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 12, 2004.  This was the company's second chapter 11 filing.  It had previously filed a chapter 11 petition in this court on August 11, 2002.  A plan was confirmed in the first case on March 18, 2003.  Mr. Frazier filed a claim in the first case based on alleged employment discrimination.[1]  After US Airways objected to his claim, he filed a pleading that included a request for relief from the automatic stay to pursue his claim in state court.  Prior to the hearing on the motion, US Airways's plan was confirmed.  The court treated Mr. Frazier's pleading as a motion for relief from the discharge injunction, but denied the motion on the ground that this court was the appropriate forum in which to liquidate the claim.  *In re US Airways Group, Inc.*, No. 02-83984-SSM (Bankr. E.D. Va., May 28, 2003).  The court did note, however, that there might be some aspect of Mr. Frazier's claim that arose post-confirmation and was therefore not encompassed by the discharge injunction:

---

[1] As explained in the memorandum opinion granting partial summary judgment against his claim in the first chapter 11 case, Mr. Frazier was employed as a fleet service agent.  The functions of a fleet service agent include ramp service, operations/tower, and central load planning.  At one point, Mr. Frazier's specific duty assignment included only operations.  Later, he was assigned to ramp work, which included the unloading of baggage from arriving aircraft.  After he injured his ankle, he sought an assignment that did not include ramp work and asserted that the company's refusal to limit his duties to operations work, and its purported enforcement of a "100 percent healed" policy in order to return to work, were violations of the Americans with Disabilities Act.  *In re US Airways Group, Inc.,* No. 02-83984-SSM (Bankr. E.D. Va., Feb. 10, 2004).

> Mr. Frazier asserts that the debtor has refused to return him to
> full duty even though he is presently capable of performing the
> duties of his position. Since his employment, according to the
> debtor, has not been terminated, Mr. Frazier *might*—an issue the
> court need not resolve on the present record—have some
> enforceable right, based on his present status, to reinstatement.
> If so, such a right— which would simply require the debtor to
> treat Mr. Frazier as it is legally required to treat any other
> current employee—would not be encompassed by the discharge
> and could be pursued without violation of the discharge
> injunction.

*Id.* at 9-10 (internal citation omitted). In any event, Mr. Frazier subsequently filed an EEOC complaint in California in June 2003 asserting discrimination claims that mirrored the claims that he had filed in this court. US Airways responded first by sending Mr. Frazier a letter demanding that he withdraw the complaint because it violated the discharge injunction; and, when he did not do so, by filing a motion in August 2003 to have him held in civil contempt for violation of the discharge injunction.

A hearing on the contempt motion was held on October 23, 2003, with Mr. Frazier participating by telephone. During the hearing, the court expressed doubt that the EEOC complaint necessarily violated the discharge injunction. Although the court agreed that the claims resembled, and could be read as embracing, those that had been asserted in Mr. Frazier's proof of claim, they could also be read more narrowly to allege only post-confirmation discrimination.[2] US Airways's counsel, perhaps perceiving which way the

---

[2] In a written order dismissing the show cause motion without prejudice, the court explained its thinking as follows:

> [T]he filed charge could reasonably be read as asserting only claims based on
> post-confirmation acts. As so limited, its prosecution would not violate the
> discharge injunction, since the issue is not whether Mr. Frazier was or was not
> (continued...)

3

wind was blowing, then withdrew the contempt motion. After a trial held in this court in February 2004, Mr. Frazier's underlying discrimination claims were disallowed.

After the second chapter 11 case was filed, Mr. Frazier commenced the present adversary proceeding seeking $9,060,000 in compensatory and punitive damages, as well as reinstatement to his former position, for alleged employment discrimination, intentional infliction of emotional distress, and "malicious use of process." The court stayed the adversary proceeding and ordered that the complaint be treated as a proof of claim.[3] A chapter 11 plan was subsequently confirmed under which allowed claims will receive a pro-rata distribution of stock in the parent holding company, US Airways Group, Inc. Following confirmation of the plan, Mr. Frazier filed an amended complaint, and both Mr. Frazier and the debtor have filed motions for summary judgment.

Discussion

I.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[2](...continued)
　　　improperly placed into a leave without pay status, but whether he is now qualified to return to duty. Of course, to the extent that Mr. Frazier, while ostensibly prosecuting a post-confirmation claim, attempts to resurrect or assert his pre-confirmation claim, such action would violate the discharge injunction and would subject Mr. Frazier to sanctions for contempt. At this point, however, the court cannot find that Mr. Frazier has crossed the line.

*In re US Airways Group, Inc.*, No. 02-83984-SSM (Bankr. E.D. Va., Oct. 24, 2003), Order at 2.

[3] The claim has been entered on the claims register as Claim No. 3463.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985). In ruling on a motion for summary judgment, a court should believe the evidence of the nonmovant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Mr. Frazier has pleaded three different causes of action, all of them are grounded in the same act, namely the filing by US Airways of the motion for contempt. The issue on summary judgement is whether Mr. Frazier has forecast evidence sufficient to raise a triable issue that the contempt motion was brought as retaliation for the filing of the EEOC complaint or that the bringing of the motion constituted either malicious prosecution or intentional infliction of emotional distress.

II.

The court will first address the retaliation claim. Mr. Frazier relies upon Title VII of the Civil Rights Act of 1964, as amended, which declares, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The cited section applies in express terms only to actions taken in retaliation for making charge under Title VII. Only a portion of the charge Mr. Frazier filed with the EEOC—namely, that he was discriminated against on account of his race—falls under Title

5

VII. The remainder of the charge alleged discrimination under the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA). However, each of those acts has its own anti-retaliation provision which does not differ in any material respect from Title VII's.[4]

On the record before this court, there can be no doubt that US Airways brought the contempt motion *in response* to the EEOC complaint, but that is a different issue from whether the motion constituted unlawful *retaliation*. The answer to that question requires the court to determine, first, whether the bringing of a court proceeding against an employee constitutes

---

[4] The ADEA's prohibition against retaliation provides in relevant part:

> (d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation. It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). The corresponding prohibition in the ADA is to the same effect:

> (a) Retaliation. No person shall discriminate against any individual because such individual has . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(a) and (b).

"discrimination" within the meaning of the statute; and, if so, whether the contempt motion here was brought without apparent justification and primarily for the purpose of punishing Mr. Frazier for having brought an otherwise protected discrimination claim or intimidating him into withdrawing the claim.

A.

In order to establish a *prima facie* case for discriminatory retaliation, Mr. Frazier must show that: (1) he engaged in a protected activity; (2) US Airways took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Tinsey v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998). Although Mr. Frazier has produced no direct evidence of US Airways's motive for bringing the contempt motion, he may nevertheless meet his initial burden using the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Specifically, all he need initially show is an adverse action triggered by the filing of the EEOC complaint. At that point, the burden shifts to US Airways to articulate a legitimate, non-retaliatory reason for its action. If US Airways carries this burden, then Mr. Frazier must show that the company's proffered explanation is merely a pretext for discriminatory retaliation. *See Price v. Thompson*, 380 F.3d 209, 212, (4th Cir. 2004).

B.

As an initial matter, US Airways takes the position that Mr. Frazier cannot establish that the bringing of the contempt motion was an "adverse employment action," since it did not directly affect the terms, conditions, or benefits of employment. However, many

7

courts—including lower courts within the Fourth Circuit—have held that bringing legal action or criminal charges against an employee who makes a charge of discrimination can constitute a prohibited retaliatory act within the meaning of the statute. *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996) (finding that plaintiff established a prima facie case of retaliation by showing: (1) the plaintiff filed an EEOC action; (2) the employer reported a purported forgery and instituted criminal proceedings; and (3) that such adverse action would not have occurred if the plaintiff had not filed an EEOC complaint); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775 (W.D. Va.1980), *appeal dism'd sub. nom. Cassidy v. Virginia Carolina Veneer Corp.*, 652 F.2d 380 (4th Cir. 1981) (finding retaliation where employer filed defamation suit against employee based upon statements the employee made to the EEOC); *Beckham v. Grand Affair, Inc.*, 671 F. Supp. 415 (W.D. N.C. 1987) (finding retaliation where an employer instituted criminal prosecution of former employee who filed a claim with the EEOC).

A narrower view, espoused by the Fifth Circuit, is that only those acts which constitute an "ultimate employment decision" by an employer can form the basis for retaliation liability under Title VII. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997). Consistent with this strict view, the Fifth Circuit has expressed great doubt that "counterclaims or lawsuits filed against a Title VII plaintiff ought to be cognizable as retaliatory conduct under Title VII. After all, companies and citizens have a constitutional right to file lawsuits, tempered by the requirement that the suits have an arguable basis." *Hernandez v. Crawford*, 321 F.3d 528, 532 (5th Cir. 2003) (quoting *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999)); *see also Glass v. IDS Financial Services, Inc.*,

8

778 F. Supp. 1029, 1061 n.53 (D. Minn. 1991) ("The court notes . . . that the anti-retaliation provisions of the ADEA and Title VII are designed principally to deal with retaliatory conduct that occurs outside the judicial system, for example: demotion, termination, poor evaluations, and loss of normal work assignment.  Anti-retaliation provisions prevent employers from intimidating plaintiffs thereby discouraging plaintiffs from seeking legal remedies.  Once a lawsuit has been filed, courts have tools to deal with counterclaims that are truly retaliatory or made in bad faith.") (internal citations omitted).

Although the Fourth Circuit has not specifically addressed the issue of whether commencing or instigating court proceedings against an employee can constitute retaliation for purposes of Title VII, this court observes that the Fourth Circuit has expressly rejected the Fifth Circuit's "ultimate employment decision" standard in retaliation cases.  *Von Gunten v. Maryland*, 243 F.3d 858, 864 (4th Cir. 2001).  As noted, two lower courts in the Fourth Circuit have expressly held that civil or criminal proceedings can constitute prohibited retaliation.  *EEOC v. Virginia Carolina Veneer Corp*; *Beckham v. Grand Affair, Inc*.  This court believes the Fourth Circuit would reach the same conclusion if the issue were directly presented.  Accordingly, this court holds that the bringing or instigating of court proceedings may, in appropriate circumstances, give rise to a cause of action under the anti-retaliation provisions of Title VII, the ADEA, and the ADA.

C.

Even though litigation activity can constitute prohibited retaliation, this court does agree that the circumstances surrounding the challenged conduct must be carefully scrutinized so as not to deprive employers of the right to take prudent actions to protect

9

legitimate legal interests. *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 593 (7th Cir. 2001) (explaining that although a *false* report to police that the employee was armed and laying in wait outside the plant after threatening his supervisor could be construed as a retaliatory action, a truthful report would not). Put another way, if an employer would have been justified in bringing litigation against an employee in the absence of a discrimination charge, the mere fact that a charge has been filed should not render the action or claim discriminatory.

In the present case, the court would have to conclude that Mr. Frazier has made a prima facie showing of retaliation in that the contempt motion was not only brought in response to the filing of the EEOC complaint, but specifically sought to compel Mr. Frazier to withdraw it. However, the court cannot find that Mr. Frazier has forecast evidence sufficient to raise a triable issue that US Airways's proffered explanation for bringing the contempt motion was merely a pretext for discrimination.

As the Supreme Court has explained, "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752,125 L.Ed.2d 407 (1993). In this case, US Airways proffers that the reason for filing the contempt motion was to protect the bankruptcy estate from what it reasonably believed was a violation of the discharge injunction as set forth in the confirmed plan. That injunction bars "all Persons [from] commencing or continuing in any manner any Claim, action, or other proceeding of any kind with respect to any Claim. . . against Reorganized Group or any other Reorganized Debtor, which they possessed or may possess prior to the

10

Effective Date[.] . . . ." *In re US Airways Group, Inc.*, No. 02-83984-SSM (Bankr. E.D. Va., Mar. 18, 2003), Order of Confirmation at 35; § 524(a)(2), Bankruptcy Code.

That a reorganized debtor plainly has a legitimate interest in protecting the claims allowance process from collateral attacks in other forums requires no citation of authority. The present case does, however, present a significant wrinkle in that the contempt motion was unsuccessful. As noted by this court both at the hearing on the contempt motion and in the subsequent order dismissing the motion, the claim Mr. Frazier filed with the EEOC could be given both a broad and a narrow construction. Broadly read, it would include the claims set forth in the proof of claim Mr. Frazier had filed. However, it could also be read more narrowly to raise only post-confirmation claims of the type that the court had discussed in the memorandum opinion denying Mr. Frazier's motion seeking leave to proceed in state court. Since the EEOC charge was not narrowly drawn, there was no ready way to determine exactly what claim Mr. Frazier was attempting to pursue. The question is whether it was reasonable, in light of that ambiguity, for US Airways to fear the worst and to bring a contempt motion to ensure that the discrimination claim was tried in this court, which is where it belonged if it was a pre-confirmation rather than a post-confirmation claim.

On the issue of contempt, it is true that this court was not willing to indulge a presumption that the ambiguous discrimination charge should be read as flouting the discharge injunction. Contempt, after all, is a serious matter. At the same time, the court's comments at the hearing and in the subsequent order recognized that the EEOC charge was ambiguous in its scope and could be read as venturing into forbidden territory. Indeed, the order dismissing the motion specifically cautioned Mr. Frazier that he should not, under the

11

guise of prosecuting a post-confirmation claim, attempt to resurrect his pre-confirmation claim.  In any event, having carefully considered the circumstances, the court is unable to find that US Airways was not, as an objective matter, justified in bringing the contempt motion.

In order to show that US Airways's proffered explanation was merely a pretext for discrimination, Mr. Frazier asserts that US Airways admitted in open court that it filed the contempt motion in order to retaliate against him.  After examining the transcript of the contempt hearing, this court can find no such admission.  Additionally, Mr. Frazier provides his own declaration that he was discriminated against.  However, Mr. Frazier's naked opinion, without more, is not sufficient to establish even a prima facie case, let alone to rebut a proffered non-discriminatory explanation.  *Goldberg v. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988).  Finally, Mr. Frazier relies on an EEOC finding of "reasonable cause" of retaliation to support his claim.  This is likewise inadequate.  *Id.* (holding that an EEOC finding was not probative because "it merely repeats facts which [the plaintiff] himself alleges elsewhere in this case and states in conclusory fashion that those facts reflect . . . discrimination.  Such findings standing alone, are not enough to salvage [plaintiff's] claim."); *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984) (holding that EEOC findings are not sufficiently probative); *Bailey v. South Carolina Dept. Of Social Services*, 851 F. Supp. 219, 221 (D.S.C. 1993) (granting summary judgment despite EEOC finding of reasonable cause).

In short, Mr. Frazier has failed to offer probative evidence that, if believed, could persuade a trier of fact that US Airways's proffered reason for filing the motion for contempt is false and that the real reason was discriminatory retaliation. For that reason, US Airways is entitled to summary judgment disallowing the retaliation claim.

III.

As an alternative basis for summary judgment, Mr. Frazier asserts that the filing of the motion for contempt also supports two state law causes of action—namely "malicious use of process" and "intentional infliction of emotional distress."

A.

As a preliminary matter, the court must determine whether the law of Virginia (where this court sits) or the law of California (where Mr. Frazier resides and where he was served with the motion for contempt) applies. A federal bankruptcy court must apply the choice of law rules of the state in which the court sits. *In re Merritt Dredging Co.*, 839 F.2d 203, 205–06 (4th Cir. 1988). The court must therefore apply Virginia's rules on conflicts of law. Under Virginia's rules, the law of the state in which the wrongful act occurred governs, regardless of where the effects of that act are felt. *Milton v. IIT Research Institute*, 138 F.3d 519 (4th Cir. 1998). Here, the alleged wrongful act—the filing of the motion for contempt—occurred in Virginia. Accordingly, Virginia substantive law applies to the common law torts asserted in the complaint.

B.

With respect to the pleaded cause of action for "malicious use of process," Mr. Frazier has conflated what are two distinct causes of action in Virginia, namely abuse of

process and malicious prosecution. Having reviewed the allegations of the amended complaint, the court interprets it as alleging malicious prosecution rather than abuse of process, because the gist of the claim is that the motion for contempt was a groundless civil proceeding instituted against him. *See Donohoe Constr. Co. v. Mount Vernon Assoc.*, 235 Va. 531, 540, 369 S.E.2d 857, 862 (1998) ("Malicious prosecution differs from abuse of process in that malicious prosecution lies for maliciously causing process to issue while abuse of process lies for the improper use of process after it has been issued.") (internal citations omitted). To establish a prima facie case of malicious prosecution under Virginia law, a plaintiff must prove that (1) the defendant instituted a prior proceeding against the plaintiff; (2) the proceeding was instituted without probable cause; (3) the proceeding was instituted with malice; (4) the underlying proceeding terminated in the plaintiff's favor; and (5) the plaintiff sustained special damages as a result of the proceeding." *Tomai-Minogu v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1236–37 (4th Cir. 1985).

For the reasons already discussed in connection with the retaliation claim, the court is unable to find that the contempt motion, although terminated in Mr. Frazier's favor, was brought without probable cause. As this court specifically acknowledged at the contempt hearing, Mr. Frazier's EEOC charge, while it could be read more narrowly, could also be read as including claims subject to the discharge injunction. Given the ambiguous description by Mr. Frazier of the scope of his claim, US Airways was not required to idly sit by and simply trust that only post-confirmation claims were to be prosecuted when the charge itself did not contain express language to that effect. Additionally, the malicious prosecution claim also fails because Mr. Frazier has not shown special damages, as required

14

under Virginia law. *See*, *Ayyildaz v. Kidd*, 220 Va. 1080, 1084, 266 S.E.2d 108, 111 (1980) (explaining that "proof of a special loss or unusual hardship results from the malicious prosecution of the original action and [a] special injury in this procedural sense excludes the kind of secondary consequences that are a common and often unavoidable burden on defendants in all similar causes") (citation omitted). Accordingly, because Mr. Frazier has failed to forecast evidence that would establish a prima facie case for malicious prosecution, summary judgment disallowing that claim is appropriate.

C.

Finally, Mr. Frazier's argument that US Airways should be found liable as a matter of law for intentional infliction of emotional distress is also without merit. Because torts like intentional infliction of emotional distress may be "easily feigned without detection," the Supreme Court of Virginia has declared that such torts are "not favored" in the law. *Ruth v. Fletcher*, 237 Va. 366, 373, 377 S.E.2d 412, 415 (1989). In order to recover on a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) that the wrongdoer's conduct caused the emotional distress; and (4) that the emotional distress is severe. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). This tort exists only where the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Russo v. White*, 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (explaining

that under Virginia law, "[i]t is not enough that the defendant acted with tortious or even criminal intent. Nor does liability extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (internal citations omitted). In order to prevail on such a claim, the alleged act must have an effect on the plaintiff that is so severe that no reasonable person could be expected to endure it. *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001).

Applying the strict analysis required by Virginia law, it is difficult to see how bringing a motion for civil contempt in ongoing litigation could be considered as rising to the level of conduct that is so outrageous as to go beyond all possible bounds of decency. Even if the court were to find—which it cannot—that the bringing of the contempt motion was completely unjustified, the court would be unable to find that Mr. Frazier has shown "severe" distress. By its very nature, litigation frequently engenders anxiety and distress. This is not a case where Mr. Frazier was accused by US Airways of especially heinous conduct (for example, child sexual abuse or the mailing of anthrax spores) likely to make him the object of public obloquy, or where Mr. Frazier suffered imprisonment or other severe repercussions as a result of the charges being brought. While it very well may be that Mr. Frazier, as he asserts, suffered sleepless nights and depression after being served with the contempt motion, there is no evidence that his level of distress and anxiety exceeded what would be expected in any person who was charged with contempt of court. Because Mr. Frazier has not forecast evidence showing that the conduct of US Airways was outrageous, as required by Virginia law, summary judgment must be entered disallowing his claim of intentional infliction of emotional distress.

Conclusion

In summary, Mr. Frazier's evidence is not sufficient to establish a triable issue of material fact on any of the three causes of action—illegal retaliation, malicious prosecution, or intentional infliction of emotional distress—asserted in the amended complaint. For that reason, summary judgment will be entered in favor of US Airways disallowing those claims. A separate order will be entered consistent with this opinion.

Date: _____    _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

Phillip H. Frazier
222 J Street, #426
San Diego, CA  92101-6825
Creditor *pro se*

Douglas M. Foley, Esquire
McGuireWoods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
Local counsel for the reorganized debtor

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA  22314
Local counsel for the Official Committee of Unsecured Creditors

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314